*In re* ESTATE OF JEANETTE DENARO, a/k/a Jeanette Gerace.—(William Leakas, Appellant, *v.* Angela Cafazzo *et al.*, Appellees.)

First District (4th Division)   Nos. 81—2142, 81—2682 cons.

Opinion filed February 17, 1983.

Phillip S. Makin, of Chicago (Harry G. Fins, of counsel), for appellant.

Alvin R. Becker, of Chicago, for appellees.

JUSTICE LINN delivered the opinion of the court:

Jeanette Denaro (decedent) died testate in 1976. Her will, which was admitted to probate on December 10, 1976, named decedent's niece and nephew as legatees; appellant William Leakas was named executor. The assets of the estate totalled approximately $26,000.

In 1980 decedent's niece wrote to the probate court judge to express her dissatisfaction with the administration of the estate. The court appointed Alvin R. Becker special administrator. Hearings on the unverified final account filed by Leakas were scheduled and continued repeatedly; finally the court removed Leakas as executor, appointed Becker administrator *de bonis non* with the will annexed, and ordered Leakas to deliver the assets of the estate to Becker.

Leakas appeals both his removal as executor and the order to deliver assets to Becker. In these two consolidated appeals Leakas argues that (1) the trial judge violated the supreme court's standards of judicial conduct by corresponding with decedent's niece without Leakas' knowledge; (2) the trial judge improperly denied him a continuance while he was on active duty in the United States Army; (3) the trial judge improperly denied his petition for a change of venue; (4) the citation to show cause why he should not be removed as executor was insufficient in that it failed to inform him of the reason for his removal; and (5) the trial court lacked jurisdiction to enter the order to deliver assets to the newly appointed administrator because Leakas had filed a notice of appeal of his removal as executor.

We affirm the decision of the trial court.

FACTS

Jeanette Gerace Denaro died on July 17, 1976, leaving a will naming William Leakas executor. Two legatees were named: decedent's niece, Angela Peppie Cafazzo, and nephew, Charles Cirrincione, both residents of Cincinnati, Ohio. The principal asset of the estate was an eight-unit apartment building in Chicago that had an estimated value of $29,000 when the will was admitted to probate on December 10, 1976. With the court's permission, Leakas subsequently sold the building for $22,000. The only other valuable items in the estate were $30 in cash, and jewelry and coins worth $758.25.

On June 2, 1980, Leakas notified the legatees that on July 15, 1980, he would present his final account to the probate court for ap-

proval. This was not done, but on June 9, 1980, one of the legatees, Angela Cafazzo, wrote the trial judge that Leakas' attorney had sent both legatees a voucher requesting that they acknowledge receipt of $936.08 as their shares in the distribution of the estate. Cafazzo refused to sign because she had not received the money. Cafazzo's letter to the judge criticized the actions and expenditures of Leakas and his attorney in administering the estate.

On October 28, 1980, Cafazzo again wrote to the probate court judge asking for a reply to her letter of June 9, and the judge responded on October 30 with a request that she furnish copies of documents relevant to the questions she had raised. Cafazzo sent the requested documents on November 1, 1980, and sent additional documents on November 12, stating at that time that in spite of the notice of account from Leakas, neither she nor her brother, the other legatee, had received a final accounting. On November 4, 1980, the trial judge notified Leakas' attorney that Leakas was to appear in court on November 20, 1980, to file his final account.

The judge began the November 20 proceedings by informing Leakas' counsel that Cafazzo had written to him, and he read the letters into the record. Leakas filed a final account unaccompanied by supporting vouchers, on November 21, 1980, and subsequently withdrew it. An amended final account was filed on December 5, 1980, also without vouchers. The account indicated total receipts of $24,906.10, disbursements of $22,180.21, distribution in kind of $758.25, and cash distribution to each legatee of $983.82. On November 21, 1980, the court appointed Alvin Becker special administrator and continued the matter until December 17, 1980. On December 12, 1980, the hearing on the final account was continued to January 29, 1981.

On December 30, 1980, the court entered an order granting leave to all parties in interest to file objections to the final account. Hearing on the matter was continued to March 16, 1981. Becker filed objections to the legatees' receiving a total of only $1,967.64 from an estate of $25,906.10, and to the fees and expenses of $10,005.47 requested by Leakas and his attorney.

Leakas subsequently requested and received three more continuances. When the last of these continuances was granted on Leakas' motion representing that he was on military duty and therefore unavailable, the court provided that the continuance was being granted with the understanding that Leakas and his commanding officer would present affidavits explaining Leakas' unavailability. This was not done, although in seeking yet another continuance Leakas did sub-

mit to the court a letter from his commanding officer stating that he was on active duty in Glenview, Illinois.

When Leakas failed to appear for a hearing on June 25, 1981, the court entered an order directing Becker, the special administrator, to prepare a citation to Leakas to show cause why he should not be removed as executor. Leakas was directed to appear on July 8, 1981. On that date Leakas filed a petition for change of venue, alleging that the trial judge was prejudiced against him and that he could not receive a fair hearing with respect to his administration of the estate. The trial judge denied the petition. Leakas filed a notice of appeal and, claiming that the trial court had accordingly lost jurisdiction, declined to participate further in the proceedings. On July 31, 1981, this court dismissed the appeal for want of an appealable order. The trial court continued the citation to remove Leakas as executor to August 7, 1981, and directed Leakas and his counsel to appear; they failed to do so, and requested another continuance.

On August 10, 1981, *nunc pro tunc* August 7, 1981, the trial court denied the requested continuance, removed William Leakas as executor, and appointed Alvin Becker administrator *de bonis non* with the will annexed. The court stated an account on behalf of Leakas (see Ill. Rev. Stat. 1981, ch. 110½, par. 24—15) and ordered him to deliver to Becker on September 4, 1981, all the assets of the estate except those for which satisfactory vouchers were filed. On August 23, 1981, Leakas filed a notice of appeal from the citation for his removal, the denial of a change of venue, and his removal as executor. Leakas failed to appear on September 4 and failed to deliver the assets of the estate to Becker. Accordingly, on September 8, 1981, the trial court entered judgment in favor of Becker and against Leakas in the amount for which the court stated an account, $25,906.10. Leakas' motion to vacate this order was denied. Following Leakas' filing of a $26,000 appeal bond, all trial court proceedings were stayed. On October 30, 1981, Leakas filed another notice of appeal seeking review of the September 8 order and the trial court's subsequent refusal to vacate it. Leakas' two appeals have been consolidated.

OPINION

Leakas' first argument on appeal is that the trial judge violated the supreme court's standards of judicial conduct (87 Ill. 2d R. 61(c)(16)) by corresponding with Angela Cafazzo without Leakas' knowledge. We find this contention totally unpersuasive. At the time the correspondence took place, almost four years had elapsed since the will had been admitted to probate. At the first court proceeding

following the exchange of letters, 20 days after the judge responded to Cafazzo's letter, the judge informed Leakas' counsel of the communication and read the letters into the record. The supreme court rule that Leakas claims was violated provides:

> "*Ex parte communications.* Except as permitted by law, a judge should not permit private or ex parte interviews, arguments or communications designed to influence his judicial action in any case, either civil or criminal.
>
> A judge should not accept in any case briefs, documents or written communications intended or calculated to influence his action unless the contents are promptly made known to all parties." (87 Ill. 2d R. 61(c)(16).)

In our judgment, the trial judge's conduct clearly was not improper under either paragraph of this rule. The letters from Cafazzo appear to be an effort to enlist the court's aid in achieving a proper settlement of the estate rather than an attempt to influence the court's judgment. Further, in view of the number of years that had elapsed since the will was admitted to probate in an obviously simple estate administration proceeding, we consider the disclosure of the communication by the judge to have been sufficiently prompt to satisfy the requirement of the second paragraph even if the communication was "intended or calculated to influence his action."

■ Our conclusion is further supported by the long-established rule that a probate court, in administering an estate, may provide relief of an equitable nature where justice requires it to do so. (*Berber v. Hass* (1965), 57 Ill. App. 2d 109, 207 N.E.2d 96, citing *In re Estate of Baughman* (1960), 20 Ill. 2d 593, 170 N.E.2d 557.) The experienced and concerned trial judge in the case at bar was acting within the scope of his authority in responding to Cafazzo's communication in order to determine whether a wrong had occurred, and then informing Leakas' attorney of the communication at the next court proceeding in the matter. Accordingly, we find no merit in Leakas' argument that the trial judge's conduct was improper.

Leakas' second claim of error is unpersuasive because it is a misstatement of the facts. Far from denying him a continuance because he was on active duty in the army, the trial judge granted him six continuances before ordering him to provide affidavits explaining his unavailability, which Leakas did not do.

When, at the court's direction, Leakas finally did appear in response to a citation to show cause why he should not be removed as executor, he filed a petition for change of venue alleging that the judge was prejudiced against him. (Ill. Rev. Stat. 1979, ch. 110, par.

501(2).) Leakas now claims that the trial judge's denial of that petition was error. We disagree.

It is true, as Leakas points out, that "[i]f a petition for a change of venue is timely, in proper form, and in compliance with the statute, the right to a change of venue in both civil and criminal cases is absolute." (*Rosewood Corp. v. Transamerica Insurance Co.* (1974), 57 Ill. 2d 247, 250, 311 N.E.2d 673, 675, citing *Hoffmann v. Hoffmann* (1968), 40 Ill. 2d 344, 239 N.E.2d 792.) However, the court in *Hoffmann* went on to explain that "where it appears that the petitioner has by motions for continuances or other conduct attempted to delay or avoid trial prior to his motion for change of venue, the trial court can inquire into the good faith of the petitioner's motion. [Citation.] If it becomes apparent that the request is made only to delay or avoid trial, the denial of the petition for change of venue does not constitute error. [Citations.]" 40 Ill. 2d 344, 348, 239 N.E.2d 792, 794.

■ As noted above, the record indicates that Leakas made numerous requests for continuances, failed to present affidavits explaining his unavailability although the sixth continuance was granted on that condition, and finally appeared only when a citation for his removal had been prepared. We believe these circumstances demonstrate that the *Hoffmann* criterion has been met and that the trial judge's denial of Leakas' petition for change of venue was proper.

Leakas' fourth claim of error is that the citation to show cause why he should not be removed as executor was insufficient in that it failed to inform him of the reason for his removal. Again, we find this argument unpersuasive. The Illinois Probate Act of 1975 provides that a representative may be removed for a number of reasons, including failure to file an inventory or accounting after being ordered by the court to do so (Ill. Rev. Stat. 1979, ch. 110½, par. 23—2(a)(7)), or if there is other good cause (Ill. Rev. Stat. 1979, ch. 110½, par. 23—2(a)(10)). The Act also provides that before removing an executor "the court shall order a citation to issue directing the respondent to show cause why he should not be removed for the cause stated in the citation." Ill. Rev. Stat. 1979, ch. 110½, par. 23—3(a).

Leakas cites *In re Estate of Rice* (1979), 77 Ill. App. 3d 641, 396 N.E.2d 298, for the proposition that an executor cannot be removed unless the reason therefor was stated in the citation for removal. While this is generally true, we do not agree that stating a specific reason is in all cases a prerequisite to the removal of an executor. In *In re Estate of Abbott* (1976), 38 Ill. App. 3d 141, 347 N.E.2d 215, an executor complained that he was removed improperly because no citation was issued as required by the applicable statute (Ill. Rev. Stat.

1973, ch. 3, par. 278). The court found that the record established statutory cause for his removal: he had failed to pay any attention to the business of the estate and failed to account for $33,500. The court concluded that this conduct showed nonfeasance, but not misfeasance, in his office as executor. Under these circumstances his removal by the trial court was affirmed because it was not contrary to the manifest weight of the evidence. A further reason for the affirmance was that "while procedural requirements for removal of the executor were not strictly followed *** [the court's action was] substantially sufficient to insure compliance with the intent and purpose of the Probate Act" because the executor was afforded a fair hearing and "was not prejudiced by formal deficiencies in procedure." 38 Ill. App. 3d 141, 144-45, 347 N.E.2d 215, 218.

■ In our view, the *Abbott* court's analysis is dispositive of the case at bar. The record of Leakas' repeated failure to appear for a hearing on his unverified accounting or to respond to the objections filed by the special administrator presents sufficient statutory cause for his removal as executor. Leakas had notice of all proceedings in the case and was afforded numerous opportunities for a hearing. Under the circumstances we find that Leakas was not prejudiced by any formal deficiencies in procedure and that the court's action substantially complied with the intent and purpose of the Probate Act.

Leakas' final argument in this appeal is that the trial court lacked jurisdiction to enter the order to deliver assets to the newly appointed administrator because Leakas had filed a notice of appeal of his removal as executor. Again, we disagree. The general rule is that the filing of an appeal divests the trial court of jurisdiction; however, the trial court retains jurisdiction to determine matters collateral or incidental to the judgment. (*Horzely v. Horzely* (1979), 71 Ill. App. 3d 542, 390 N.E.2d 28.) Collateral or supplemental matters include those lying outside the issues in the appeal or arising subsequent to delivery of the judgment appealed from. *Arndt v. Arndt* (1947), 331 Ill. App. 85, 72 N.E.2d 718, *rev'd on other grounds* (1948), 399 Ill. 490, 78 N.E.2d 272.

■ In *Graff v. Graff* (1979), 71 Ill. App. 3d 496, 389 N.E.2d 1206, this court held that a husband's appeal from an order awarding his interest in the marital home to his wife did not divest the trial court of jurisdiction to order the associate judge in the land title division to execute a deed for that interest. The order was held to be proper because "the court was merely endeavoring to enforce its judgment." (71 Ill. App. 3d 496, 503, 389 N.E.2d 1206, 1212.) Here, the probate court merely was enforcing the removal of Leakas as ex-

ecutor by ordering as a necessary incident to that judgment that the assets of the estate be turned over to the newly appointed administrator. Furthermore, counsel for Leakas conceded during oral argument that the order to deliver assets dealt with a collateral matter and that the trial court had jurisdiction to enter it. Accordingly, we find no error in the entry of this order.

For all of the reasons discussed above the judgment of the trial court is affirmed.

Affirmed.

JOHNSON and JIGANTI, JJ., concur.